UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
JODY CONCEPCION,

                Plaintiff

                                              Civ. Case No. 05-8501(KMK))JCF)
   -against-

THE CITY OF NEW YORK, POLICE OFFICER
ALEXIS FERNANDEZ, "JANE and JOHN DOES" 1-15,
And the REPUBLICAN NATIONAL COMMITTEE,

                Defendants

-------------------------------------------------------x


PLAINTIFF'S MEMORANDUM OF LAW IN REPLY




KAREN WOHLFORTH, ESQ.
ZELDA E. STEWART, ESQ.
Attorneys for Plaintiff
299 Broadway suite 1700
New York, New York 10007
(212) 619-2457

Plaintiff, JODY CONCEPCION, respectfully submits this reply to the memorandum in opposition submitted by the Defendants, City of New York and the Republican National Committee, and in support of the within motion to compel the production of two documents, the City Agreement for the 2004 Republican National Convention and the Site City Agreement (or City Site Agreement), together with whatever exhibits may be attached thereto. Access to said documents may, in addition, help to identify people and entities which have other documentation relevant to Plaintiff's causes of action.

Plaintiff contends that not only are these two agreements relevant to the gravamen of the complaint of conspiracy to violate the civil rights of people during the Republican National Convention, but are essential to understanding how the relationship between the City of New York and the Republican National Committee was structured and who held the decision making power between the parties thereto during the Republican National Convention in 2004. Financial arrangements between the City of New York and the Republican Party are also important to understanding how and why the New York City Police Department held unprecedented numbers of innocent people in inhumane conditions for days, on the strength of allegations of mere violations, not crimes. Furthermore, it is plaintiff's contention that thousands of innocent people, both bystanders and demonstrators were removed from the streets of New York on legal pretexts by the NYPD, in order to further the political interests of the Republican Party. This is the basis of the conspiracy allegation in the complaint before this Honorable Court, and the written agreements, both text and subtext, are essential pieces of evidence which the plaintiff has the right to examine.

**The Security Argument**

Defendant attempts once again to hide contracts, which are public records for expenditure of public monies, behind the veil of the exigencies of security. Clearly, the terms of the indemnification agreements between the parties are __not__ subject to security concerns, nor are the general agreements between the parties as to the nature of the security services that were to be provided to the RNC by the City of New York, the

financial arrangements regarding these services, and the decision making hierarchy that was put in place which would have affected policy toward demonstrations during the convention. Clearly, the arrangements for this convention carved out an unprecedented relationship of accommodation between an unincorporated association (the RNC) and the City of New York. Any mutual agreements which may have compromised the City of New York legally, with respect to provisions of the Public Officers Law, the Constitution of the State of New York and the General Municipal Law, are relevant to the issue of the nature of the relationship and the power structure established during the convention. If some details of these agreements are actually subject to security concerns, the court can review those sections of the agreements to determine if they warrant redaction. Furthermore, confidentiality agreements already in place further protect security interests raised by the defendants. It is not even clear whether all signatories to the said agreements from defendant Republican National Committee, the Host Committee and the Committee on Arrangements, were at the time, or are now, subject to any confidentiality restrictions regarding these contracts. Clearly, prior counsel for the Republican National Committee, Jeff Buley, did not cite any confidentiality issues when he listed one of the agreements in his Rule 26 disclosures.

**The Relevance Argument**

The agreements not only go to the issue of the conspiracy but to the *MONELL* claim raised by most of the plaintiffs herein, as to the policies and patterns established for the policing of the demonstrations, and for the post-arrest procedures which resulted in removing thousands of people from the streets for several days, in clear violation of their civil rights and due process. Further, the agreements may reveal, either directly or indirectly, considerations that went into the balancing of legitimate law enforcement and intelligence interests against the need to preserve the rights of protesters to free expression and assembly are relevant to the issues in this and the other consolidated cases.

Defendant's citation of the Heredia case is misapplied, since in that case, the plaintiff's only cause of action was for retaliation, and thus, information sought regarding a conspiracy to cover up civil rights violations were outside the scope of his complaint.

This is clearly not the case here, since this complaint specifically claims a conspiracy to violate the Plaintiff's civil rights. The other cases cited by Defendant also involve completely different fact patterns, not comparable to the case at bar.

Counsel for the defendants claims that it is sufficient that we take his word for what is or is not contained in the Agreements, and for the existence of the indemnifications without opportunity to examine the actual terms of the indemnifications. It is not appropriate or legally sufficient that counsel for the defendants testifies as to the facts in issue in this case. Plaintiff has the right to examine the actual terms of the indemnifications (particularly as they relate to indemnification for malfeasance such as civil rights violations, not just negligence claims)[1], the security agreements between the parties and the power structure set up for decision making regarding security matters, particularly as they relate to crowd control and demonstrations. Public contracts signed by the Mayor for the expenditure of public monies are nonetheless to be made available to the public pursuant to the Public Officers Law. On information and belief, the Mayor of New York signed the City Agreement, and it provided for the expenditure of public monies and public services at the behest of a private association which had a clear political agenda.

Counsel for defendants mischaracterizes the purpose of the request. The purpose is not simply to confirm that monies are available to cover plaintiff's claim. The purpose is to show that the agreements between the parties thereto were devised to give the Republican Party control over the streets of New York during the convention, protect the Republican Party from the consequences of said control, and to utilize public funds to accomplish that end.

### The Privilege Log

The position of the defendants is completely inconsistent.

---

[1] In Landmark West! V. City of N.Y., 9 Misc 3d563, the claim was dismissed on the merits, not for lack of standing. In the instant case, the issue of the exact wording of the indemnification clause goes to the propriety of representation of the Republican Party by NYC Corporation Counsel and thus, the nature of their relationship and the City's willingness to deceive on behalf of the Republican Party. On information and belief, the City did not indemnify the Republican Party for malfeasance claims, thus their representation of the Republicans is a violation of their own agreement, aside from the question of its legality.

Despite the fact that counsel claims that the documents are totally irrelevant, which is ostensibly why they do not appear on the privilege log, portions of the documents are proffered as part of defendant's Rule 26 disclosures, disc 12/1/05, as file number 1881, bates stamped numbers 10441-8. It is interesting to note, that apparently pages 9-12 of one agreement are provided, eliminating the rest of the document, but pages 28-31 appear to be from a different document with no indication from counsel as to what the source of these documents is. These pages are apparently from the agreement between the Committee on Arrangements, the Host Committee and the City. The pages provided do refer to some security and related protective services, but do not contain any indemnification agreements. Despite the fact that counsel claims that these agreements are "totally irrelevant" some pages do appear, without any other pages being indicated on the privilege log. Defendants are simply not playing by the rules. (Exhibit E)

It is also interesting to note, that counsel for Plaintiff have attempted to FOIL these agreements from the Comptroller's Office and from the Mayor's Office on Contracts. Curiously, although the Comptroller's office initially advised by telephone that they had both contracts listed on their computer and would provide same, their written response claimed that they were not in possession of either document. The Mayor's Office on Contracts, in addition to advising that they were not in possession, copied counsel for the City, Jeff Dougherty, despite the fact that no reference to this case was made in the FOIL request. I attach hereto copies of the FOIL requests and responses (Exhibits F, G, H).

**Plaintiff's Request for Relief Should be Granted**

Counsel for defendants persists in framing the issue to the court in an overly literal way. Plaintiff does not expect that these agreements will necessarily contain a recipe for the removal of demonstrators from East 16th Street. What plaintiff seeks is an understanding of the terms of the relationship between the alleged co-conspirators to provide a picture of the general understandings between them, both explicit and tacit, the power structure which was established with respect to security issues and public protest, procedures for decision making and financial incentives, etc.

Because the situation was obviously fluid and complex, and the potential conflicts of interest and improprieties were sufficient cause for obfuscation, we fully expect that the agreements will reflect these realities. Thus, a review of these agreements by the court for the literal kind of "relevance" as defined by counsel for the defense, would not provide the kind of analysis the Plaintiff requires in order to prove her allegations.

It is for these reasons, that Plaintiff requests the Court grant the motion to compel and awards sanctions for failure to account for these documents on the privilege log, together with such other and further relief as to this Court seems just.

Dated: New York, New York
May 2, 2006

Respectfully submitted,
/s/
KAREN WOHLFORTH, ESQ. (KD0235)
Attorney for Plaintiff
299 Broadway suite 1700
New York, New York 10007
(212) 619-2457

# CERTIFICATE OF SERVICE

      Pursunt to Rule 5(b) of the Federal Rules of Civil Procedure, I certify that on May 5, 2006, I personally caused to be served by personal in-hand delivery true copies of the attached NOTICE OF MOTION, together with true copies of the supporting declaration of KAREN WOHLFORTH and Reply Memorandum of Law upon:

      Asst. Corp. Counsel Jeffrey Dougherty, Esq.
      Offices of Corporation Counsel
      100 Church Street
      New York, New York 10007

      *Attorney for Defendants*

                                        KAREN WOHLFORTH