```
UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
JUDY CONCEPCION,                     : 05 Civ. 8501 (KMK) (JCF)
                                     :
              Plaintiff,             :    MEMORANDUM
                                     :    AND  ORDER
     - against -                     :
                                     :
THE CITY OF NEW YORK, et al.,        :
                                     :
              Defendants.            :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

This is one of more than eighty related cases in which hundreds of persons who were arrested during the 2004 Republican National Convention have sued the City of New York, various police officers and officials, and, in some cases, the Republican National Committee (the "RNC"), alleging deprivation of their constitutional rights.  The plaintiff now moves pursuant to Rule 37 of the Federal Rules of Civil Procedure for an order compelling the defendants to produce two documents governing the relationship among the entities responsible for the logistical organization of the convention: the Site City Agreement for the 2004 Republican National Convention (the "Site City Agreement") and the City Agreement for the 2004 Republican National Convention (the "City Agreement").  Neither document is relevant in its entirety to the claims raised in this litigation; both, however, contain relevant portions that must be disclosed.

Background

The plaintiff, Jody Concepcion, is a college student and amateur photographer. (Complaint ("Compl."), ¶ 10). On August 31, 2004, at approximately 6:30 p.m., she was walking along the sidewalk on East 16th Street near Union Square East in Manhattan, taking photographs of persons protesting the Republican National Convention. (Compl., ¶¶ 9-10). According to her complaint, officers of the New York City Police Department arrested her along with a number of the demonstrators without warning and without ordering them to disperse. (Compl., ¶ 11).

After being held approximately three hours, Ms. Concepcion was transported to a holding facility at Pier 57, located at 11th Avenue and West 15th Street in Manhattan. (Compl., ¶ 13). She was held there in purportedly unsanitary conditions along with approximately 1,000 other arrestees for about fourteen hours. (Compl., ¶ 14). She was then transferred to the Police Department's Central Booking facility. (Compl., ¶¶ 14, 20). She was released approximately 48 hours after her arrest and given a desk appearance ticket for a violation. (Compl., ¶ 18). Ms. Concepcion alleges that during the period of her detention she was placed in excessively tight handcuffs and deprived of food, sleep, and proper toilet facilities for unreasonable periods of time. (Compl., 16, 17).

The plaintiff was ultimately charged with disorderly conduct

2

and parading without a license.  (Compl., ¶¶ 21, 22).  She appeared in court on three occasions, and on November 29, 2004, all charges against her were dismissed.  (Compl., ¶ 24).

Ms. Concepcion then filed this action asserting violations of her federal constitutional rights in connection with allegations of false arrest, malicious prosecution, and use of excessive force. She also asserts pendent state claims.  In addition to her allegations against the arresting officers, the plaintiff has asserted claims against the City of New York (the "City") under Monell v. Department of Social Services, 436 U.S. 658 (1978), alleging that the deprivation of her rights was a consequence of the City's policies and practices.  Finally, she contends that the Republican National Committee conspired with the other defendants to violate her rights and those of the persons protesting during the convention.

During the course of discovery, the plaintiff became aware of the Site City Agreement and the City Agreement.  The Site City Agreement is an agreement among three parties: the New York City Host Committee 2004 (the "Host Committee"), a non-profit corporation created to coordinate arrangements for the convention; the RNC; and the Committee on Arrangements for the 2004 Republican National Convention, a committee of the RNC.  It governs a wide variety of aspects of the event.  The City Agreement, an exhibit to the Site City Agreement, is a contract between the Host Committee

and the City of New York that addresses the City's role in the
convention.

When the defendants declined to produce the agreements in
response to Ms. Concepcion's request, she filed the instant motion.
The disputes concern the discoverability of the agreements in their
entirety, provisions relating to security, and indemnification
clauses. As requested by both parties, I have reviewed the
agreements <u>in camera</u>, and I will address each issue in turn.

<u>Discussion</u>

A. <u>The Entire Agreements</u>

The plaintiff's argument for disclosure of the agreements in
full is best captured by a paragraph from her reply brief:

> Plaintiff contends that not only are these two
> agreements relevant to the gravamen of her complaint of
> conspiracy to violate the civil rights of people during
> the Republican National Convention, but are essential to
> understanding how the relationship between the City of
> New York and the Republican National Committee was
> structured and who held the decision making power between
> the parties thereto during the Republican National
> Convention in 2004. Financial arrangements between the
> City of New York and the Republican Party are also
> important to understanding how and why the New York City
> Police Department held unprecedented numbers of innocent
> people in inhumane conditions for days, on the strength
> of allegations of mere violations, not crimes.
> Furthermore, it is plaintiff's contention that thousands
> of innocent people, both bystanders and demonstrators
> were removed from the streets of New York on legal
> pretexts by the NYPD, in order to further the political
> interests of the Republican Party. This is the basis of
> the conspiracy allegation in the complaint before this
> Honorable Court, and the written agreements, both text
> and subtext, are essential pieces of evidence which the
> plaintiff has the right to examine.

(Plaintiff's Memorandum of Law in Reply ("Pl. Reply Memo.") at first unnumbered page).[1]

But not every tidbit of information about the relationship between two parties is reasonably likely to lead to evidence of a conspiracy between them. For example, it is hard to imagine how sections of the Site City Agreement relating to topics such as toilet facilities (§ 5.11), novelties and souvenirs (§ 6.2), or the severability of contractual provisions (§ 8.7) could have any bearing either on the arrest of Jody Concepcion or, more generally, on any collusion between the City and the RNC concerning the treatment of protestors.

Furthermore, the fact that some portions of the agreements may contain discoverable information does not mean that the complete documents must be produced. As long as the relevant portions are disclosed together with such contextual information as necessary for the sections produced to be comprehensible, the defendants have met their obligations. See Zaccaro v. 50 East 196th Associates, L.P., No. 96 Civ. 5119, 1997 WL 661905, at *1 (S.D.N.Y. Oct. 23, 1997) (permissible to redact irrelevant material in discovery); Arkwright Mutual Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh, PA, No. 90 Civ. 7811, 1993 WL 14448, at *4 (S.D.N.Y.

---

[1] The plaintiff also argues that, as public contracts, the agreements should be available under New York State's Freedom of Information Law, Public Officers Law § 86 et seq. That is not an issue to be decided by this Court.

Jan. 11, 1993) (same).

It is appropriate, then, to determine whether specific sections of the Site City Agreement and the City Agreement must be produced.

B. <u>Security Arrangements</u>

The arrangements that the City made for the Republican National Convention go to the heart of the plaintiff's claims. Ms. Concepcion alleges that she was falsely arrested as the result of the City's policies relating to the control of protestors. Those policies are therefore subject to discovery. <u>See, e.g.</u>, <u>Willis v. Mullins</u>, No. CV F 04 6542, 2006 WL 302343, at *2 (E.D. Cal. Feb. 8, 2006) (describing <u>Monell</u> discovery); <u>Vodak v. City of Chicago</u>, No. 03 C 2463, 2004 WL 1381043, at *5 (N.D. Ill. May 10, 2004) (same). The defendants' objections to producing sections of the agreements relating to security fall into two categories. First, they argue that the agreements are irrelevant because they do not address the specific locations where Ms. Concepcion or the plaintiffs in the related cases were arrested or detained. Second, they contend that, even if relevant, the requested information is privileged from disclosure precisely because it relates to security.

The defendants' relevance objection has some limited merit. To the extent that the agreements address security at a specific venue such as Madison Square Garden that had no connection to the protests or ensuing arrests, that information need not be

disclosed.  At the same time, general provisions regarding security are relevant even if they do not refer to sites such as East 16th Street, where protests were held, or the 57th Street Pier, where arrestees were detained.  This is true both because the general provisions have, by definition, general applicability, and because their disclosure may assist the plaintiff in pursuing discovery concerning more specific security arrangements.

The defendants' objection on grounds of security is most aptly characterized as an assertion of the law enforcement privilege. "The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re Department of Investigation of the City of New York, 856 F.2d 481, 484 (2d Cir. 1988).  In order to sustain the privilege, the defendants "must make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted, and they may not rely simply on generalized reiterations of the policies underlying the privilege." Kunstler v. City of New York, Nos. 04 Civ. 1145, 04 Civ. 665, 04 Civ. 2611, 2005 WL 2656117, at *1 (S.D.N.Y. Oct 18, 2005); see also MacWade v. Kelly, 230 F.R.D. 379, 381 (S.D.N.Y. 2005) (party asserting law enforcement privilege

"must make a clear showing of harm").

Here, the defendants have made no such showing. They have provided no affidavits attesting to any specific harm that would flow from disclosure of the agreements. They simply rely on counsel's representations that "[t]he Convention took place in a setting occupied with great concerns for terrorist acts" and that disclosure "could compromise the ability to provide similar security at other national events." (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Compel Production of Certain Documents at 3). Simply raising the spectre of terrorism is not enough. See Kunstler, 2005 WL 2656117, at *2 (declaration of police inspector insufficiently specific to support law enforcement privilege); Haus v. City of New York, No. 03 Civ. 4915, 2004 WL 3019762, at *4-5 (S.D.N.Y. Dec. 29, 2004) (privilege rejected where defendants failed to show that security planning for specific demonstration would harm security at future events). Accordingly, the defendants' invocation of the law enforcement privilege is rejected.

The defendants shall therefore produce § 5.19 of the Site City Agreement, entitled Security and Related Protective Services, found at pages 28-31,[2] and, to provide the necessary context, they shall disclose the cover page, the table of contents, and the

---

[2] The defendants have, in fact, already produced these pages in discovery, though they claim to have done so inadvertently.

8

introductory paragraph on page 1 that identifies the parties to the agreement. Likewise, the defendants shall produce § 4.7 of the City Agreement entitled Security and Related Protective Services and found at pages 9-12, along with the cover page and the table of contents.

    C. <u>Indemnity Provisions</u>

    The plaintiff also seeks disclosure of any provision of the agreements by which the City indemnifies the RNC. According to Ms. Concepcion, it would be illegal for the City to indemnify or provide representation for the RNC with respect to claims of intentional misconduct. Whatever the validity of such an argument, it cannot form the basis for obtaining discovery since no such claim is pled in the complaint. <u>See</u> Fed. R. Civ. P. 26(b)(1) (party may obtain discovery of information "relevant to the claim or defense of any party.").

    While the plaintiff is entitled to determine the extent to which defendants may be able to satisfy any judgment, the defendants have offered to stipulate that the City will indemnify the RNC for any award. Nevertheless, Ms. Concepcion argues that the purpose of her discovery demand

> is not simply to confirm that monies are available to cover plaintiff's claim. The purpose is to show that the agreements between the parties thereto were devised to give the Republican Party control over the streets of New York during the convention, protect the Republican Party from the consequences of said control, and to utilize public funds to accomplish that end.

(Pl. Reply Memo. at third unnumbered page).

The plaintiff's enthusiastic rhetoric aside, she is entitled to explore the potential bias or prejudice of adverse parties. <u>See</u> <u>Bank Brussels Lambert v. Chase Manhattan Bank</u>, Nos. 93 Civ. 5298, 93 Civ. 6876, 93 Civ. 8720, 94 Civ. 1317, 1996 WL 512287, at *5 (S.D.N.Y. Sept. 9, 1996). An indemnification agreement between co-defendants may lead to evidence of such bias. <u>See</u> <u>Powerlift, Inc.</u> <u>v. Mark Industries, Inc.</u>, No. 86 C 2055, 1987 WL 12177, at *1 (N.D. Ill. June 9, 1987). Therefore, the defendants shall also produce § 5.1(a) of the City Agreement, entitled Terms of Indemnity, located at pages 13-14.

## Conclusion

For the reasons discussed, the plaintiff's motion to compel is granted to the extent set forth above and otherwise denied. Her application for an award of costs incurred in connection with this motion is denied.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       August 4, 2006

Copies mailed this date:

Karen D. Wohlforth, Esq.
Zelda E. Stewart, Esq.
299 Broadway, Suite 1700
New York, NY 10007

10

Jeffrey A. Dougherty, Esq.
Assistant Corporation Counsel
100 Church Street
New York, NY 10007