UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

Civ. Case No. 05-8501((KMK)(JCF)

JODY CONCEPCION,

                    Plaintiff

                                              ECF Case

        -against-

THE CITY OF NEW YORK, POLICE OFFICER
ALEXIS FERNANDEZ, "JANE and JOHN DOES" 1-15,
and the REPUBLICAN NATIONAL COMMITTEE,

                    Defendants

----------------------------------------------------------------x

**DECLARATION OF KAREN WOHLFORTH IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND THE COMPLAINT PURSUANT TO F.R.C.P. 15(A) AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSPIRACY CLAIM**

KAREN WOHLFORTH, having been fully apprised of the penalties of perjury, declares and states that the following statements made of her own knowledge are true and that statements made on information and belief, and opinions, she believes to be true:

1. I am one of the attorneys representing the Plaintiff in this action.

2. I submit this Declaration in support of Plaintiff's Motion to amend the complaint pursuant to F.R.C.P. 15(a).

3. Attached as Exhibit A is a true and correct copy of the Plaintiff's Second Amended Complaint

4. Attached as Exhibit B is a true and correct copy of an article from the New York Times dated February 8, 2007

5. Attached as Exhibit C is a true and correct copy of the pertinent sections of the Site City Agreement

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

New York, New York
February 9, 2007

KAREN WOHLFORTH

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------x

|  |  |
|---|---|
| JODY CONCEPCION, | **SECOND** |
|  | **AMENDED COMPLAINT** |
| Plaintiff, | 05 CV 8501(KMK)(JCF) |
| -versus- |  |

THE CITY OF NEW YORK, POLICE OFFICER
ALEXIS FERNANDEZ, Shield #29781,
"JANE and JOHN DOES" 1-15,
 and the REPUBLICAN NATIONAL COMMITTEE,

                    Defendants
-----------------------------------------x

     Plaintiff, JODY CONCEPCION, by her attorneys, KAREN WOHLFORTH
and ZELDA E. STEWART, as and for her verified complaint, alleges
as follows:

     1. That plaintiff served a demand or Notice of Claim
upon the defendant City of New York, on November 29, 2004,
describing the incident that occurred and the manner of its
occurrence, giving rise to plaintiff's claims against the
defendants for false arrest, false imprisonment, malicious
prosecution, assault, battery, abuse of process, unlawful
fingerprinting and photographing, violation of civil rights,
negligent hiring, retention and supervision, intentional
infliction of emotional distress, harassment, and damage to
professional and personal reputation.

     2. That at least 30 days have passed since the
presenting of the foregoing demand for settlement or claim to the
City of New York, and defendant has failed, neglected and refused

1

to settle these claims.

3. That no 50(h) hearing has been timely requested pursuant to section 50(h) of the General Municipal Law.

4. That this action is commenced within one year and 90 days after the cause of action arose.

5. That plaintiff is a resident of the State of New York, County of Bronx.

6. That at all times hereinafter mentioned, the defendant CITY OF NEW YORK ("the CITY") is a municipality.

7. That at all times hereinafter mentioned, the defendant City of New York is a municipality acting through the NEW YORK POLICE DEPARTMENT("NYPD").

8. That at all times hereinafter mentioned, defendant the CITY is responsible for the policy, practice, supervision, customary behavior and conduct of all NYPD matters in New York City, as well as the hiring, screening, training, supervising, controlling and disciplining of all NYPD personnel.

9. That at all times hereinafter mentioned, defendant the CITY was responsible for enforcing the rules and regulations of the NYPD and compliance with the laws of the State of New York and of the United States.

10. That at all times hereinafter mentioned, the

2

defendant REPUBLICAN NATIONAL COMMITTEE ("RNC") is a political action committee and/or political association doing business in the State of New York inter alia.

11. That upon information and belief, the RNC Committee on Arrangements is a subsidiary and/or subcommittee of defendant RNC, and as such is under the dominion and control of the RNC.

12. That upon information and belief, the RNC Committee on Arrangements participates in and/or is responsible for the selection of the host city for the Republican Party's National Convention, including the 2004 Convention.

13. That upon information and belief, the RNC Committee on Arrangements (hereinafter included in references to "RNC") participates in and/or is responsible for coordination and planning of details for the Republican Party's National Convention, including the 2004 Convention.

14. That at all times hereinafter mentioned, the RNC planned, organized, managed, supervised and held the Republican National Convention in the City of New York, from August 30 through September 2, 2004.

15. That at all times hereinafter mentioned, Police Officer ALEXIS FERNANDEZ, Shield #29781 (hereinafter Police Officer Alexis Fernandez), Police Officers "JANE" and "JOHN" DOES

3

1-15, were and are Police Officers employed by the City of New York.

16. That at all times hereinafter mentioned, Police Officer ALEXIS FERNANDEZ, and Police Officers "JANE" and "JOHN" DOES 1-15 violated the plaintiff's rights in the manner described below.

## AS AND FOR A FIRST CAUSE OF ACTION

17. That on August 31, 2004, at approximately 6:30 PM, on or about East 16th Street between Union Square East and Irving Place in New York, New York, the plaintiff, JODY CONCEPCION, was stopped, assaulted and arrested, without probable cause or justification by officers of the New York City Police Department, or acting under the aegis of the New York City Police Department, one of whose names is ALEXIS FERNANDEZ, Shield #29781 of the Housing PSA 5.

18. That ALEXIS FERNANDEZ represented that he was of the "013 Command, MCS Precinct."

19. That plaintiff, a college graduate and amateur photographer, after having just left her doctor's office, was walking on the public sidewalk and taking photographs of groups of people on the street, when she was arrested without cause or justification by officers of the New York City Police Department,

4

including one police officer, ALEXIS FERNANDEZ.

20. That without warning, and without notice to disperse, and without cause or justification, plaintiff, along with numerous other civilians, was wrongfully detained, arrested and ordered to sit on the ground for an unreasonable period of time, to wit: approximately three hours.

21. That plaintiff informed police officers that she was not protesting and requested to leave the area.

22. That all officers denied the aforesaid request.

23. That after approximately three hours, plaintiff was then transported to a holding facility at Pier 57 located on/or about 11th Avenue and West 15th Street, near the Hudson River in Manhattan.

24. That plaintiff was transported to said facility at Pier 57 without her consent and against her will.

25. That said facility at Pier 57 was a former bus depot.

26. That said facility at Pier 57 was unsanitary, containing grease and other toxic substances, including but not limited to oil residue and gasoline, on the floor.

27. That said bus depot was retrofitted with metal holding pens and razor wire, without chairs, benches or any

5

seating, for use during time period of the 2004 Convention.

28. That plaintiff was held overnight for approximately 14 hours at said bus depot with approximately 1,000 other persons without her consent and against her will.

29. That thereafter plaintiff was taken to a holding cell located at 100 Centre Street, New York, New York without her consent and against her will.

30. That during the aforesaid period of detention plaintiff was fingerprinted without her consent and against her will.

31. That during the aforesaid period of detention plaintiff was photographed without her consent and against her will.

32. That during the aforesaid period of detention plaintiff was placed in at least seven holding cells without her consent and against her will.

33. That during the aforesaid period of detention plaintiff was placed in plastic handcuffs which were tightened, for over three continuous hours, causing extreme pain in her wrists, arms and shoulders. Plaintiff suffered a bruise on her left wrist as a result of said plastic handcuffs.

34. That said handcuffing of plaintiff was without her

6

consent and against her will.

35. That during the aforesaid period of detention plaintiff was searched, held in inhumane and unsanitary conditions, and was deprived of food, sleep, seating and proper toilet facilities for unreasonable periods of time.

36. That after approximately 48 hours of continuous incarceration, plaintiff was finally released on September 2, 2004, with a desk appearance ticket charging a single violation.

37. That at no point in time during this entire process, was plaintiff advised of her right to counsel or "Miranda Rights".

38. That plaintiff's cell phone was confiscated.

39. That for a period of over 15 hours, plaintiff was not permitted a phone call, was held incommunicado from her family and friends, and was effectively "disappeared".

40. That plaintiff was falsely and maliciously charged with one violation of PL240.20, disorderly conduct.

41. That upon her first appearance before the Court, the District Attorney falsely and maliciously added additional charges of "parading without a license" and "disorderly conduct."

42. That plaintiff was wholly innocent of said criminal

7

charges.

43. That plaintiff did not contribute in any way to the conduct of the defendants, their agents, servants and employees.

44. That plaintiff was forced by defendants to submit to the aforesaid arrest and imprisonment without her consent and against her will.

45. That on November 29, 2004, after three court appearances, all charges were dismissed.

46. That by reason of the foregoing false arrest plaintiff suffered severe emotional distress, humiliation, ridicule, indignities, pain and suffering, damage to her personal reputation, lost time from work, and was damaged in the amount of $2,000,000.00 against all defendants.

## AS AND FOR A SECOND CAUSE OF ACTION

47. That plaintiff repeats and re-alleges each and every allegation contained in paragraphs marked 1-46 with the same force and effect as if fully set forth herein.

48. That plaintiff was held in the police custody for approximately 48 hours, then released with a Desk Appearance Ticket.

8

49. That the acts of the defendants constitute false imprisonment and excessive detention.

50. That as a result of the foregoing false imprisonment and excessive detention, the plaintiff suffered severe emotional distress and damage to her personal and professional reputation, pain and suffering, and has been damaged in the amount of $2,000,000.00 against all defendants.

### AS AND FOR A THIRD CAUSE OF ACTION

51. That plaintiff repeats and re-alleges each and every allegation contained in paragraphs marked 1-50 with the same force and effect as if fully set forth herein.

52. That plaintiff was assaulted by the defendant police officers, without cause or justification.

53. That as a result of the placement of the plaintiff in plastic handcuffs for unreasonable lengths of time, plaintiff suffered extreme pain and bruises on her wrists, and extreme pain in her arms and shoulders.

54. That in addition, plaintiff was placed in a former bus depot with no seating or bedding and with apparent toxic substances in said bus barn, including but not limited to the greasy floor.

55. That as a result, plaintiff was not able to sleep

9

for 48 hours, was not reasonably fed, nor allowed to toilet at reasonable intervals or in reasonable conditions.

56. That said conditions were, and on information and belief, inhumane and maliciously and intentionally inflicted upon plaintiff.

57. That plaintiff suffered extreme pain about her wrists, arms and shoulders, bruising on her left wrist, fingerprinted and photographed without her consent and against her will, and suffered severe physical and emotional distress, and lost time from work.

58. As a result of said assault and battery, plaintiff has been damaged in the amount of $2,000,000.00 against all defendants.

AS AND FOR A FOURTH CAUSE OF ACTION

59. That plaintiff repeats and re-alleges each and every allegation contained in paragraphs marked 1-58 with the same force and effect as if fully set forth herein.

60. That upon examination, the aforesaid criminal charges were false and maliciously made.

61. That therefore the Judge of the Criminal Court of the City of New York, in Criminal Term, Part Jury 2, dismissed all charges under the New York Penal Law on November 29, 2004.

62. That said prosecution and criminal charges and hearings were instituted and procured by the defendants, their agents, servants and employees in this action unlawfully and maliciously and without any reasonable or probable cause whatsoever therefore.

63. That the commencement and/or continuation of the criminal proceedings by the defendants against the plaintiff was without probable cause, with actual malice and was terminated in favor of plaintiff.

64. That by reason of the aforesaid unlawful and malicious prosecution, the plaintiff was deprived of her liberty, was subjected to great indignity, humiliation, pain and great distress of mind and body and was held up to scorn and ridicule, was injured in her character and reputation, was prevented from attending her usual business and vocation, was injured in her reputation in the community and the said plaintiff has been otherwise damaged.

65. That by reason of the aforesaid, the plaintiff has been damaged in the amount of $2,000,000.00 against all defendants.

### AS AND FOR A FIFTH CAUSE OF ACTION

66. That plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs marked 1-65

11

with the same force and effect as if fully set forth herein.

67. That defendants, their agents, servants and employees negligently, carelessly and recklessly hired and then failed to properly train, supervise and discipline their employees, in particular the named defendant ALEXIS FERNANDEZ, in hiring and retaining as and for its employee the above named individual; in that said defendant employee lacked the experience, deportment and ability to be employed by defendant; in that defendant failed to exercise due care and caution in its hiring practices, and failed to train their employees in the proper manner of crowd control, and to otherwise act as reasonably, prudent police officers, failed to give them proper instruction as to their deportment, behavior and conduct as representatives of their employers; and, in that defendants, their agents, servants and employees were otherwise reckless, careless and negligent in hiring, retention, training, supervision and discipline of said police officers.

68. That the aforesaid occurrence, to wit: the false arrest and imprisonment, assault and battery and the resulting injuries to mind and body therefrom, were caused wholly and solely by reason of the negligence of defendant, its agents, servants and employees without any negligence on the part of the plaintiff.

12

69. That by reason of the aforesaid, plaintiff was injured in mind and body, still suffers and, upon information and belief, will continue to suffer great physical and mental pain, and was rendered sick, sore, lame and disabled and so remains, and was incapacitated from her usual occupation and will, upon information and belief, be so incapacitated in the future.

70. That by reason of the aforesaid, the plaintiff has been damaged in the amount of $2,000,000.00 against all defendants.

## AS AND FOR A SIXTH CAUSE OF ACTION

71. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs marked 1-70 with the same force and effect as if more fully set forth herein.

72. That defendants, their agents, servants, and employees performed their police duties negligently, carelessly and recklessly in that they failed to use such care in the performance of their police duties as a reasonably prudent and careful police officer would have used under similar circumstances, in that they negligently, carelessly, and recklessly arrested the plaintiff without making proper investigation, in that they negligently, carelessly and recklessly used the threat of physical force and actually used physical force upon the plaintiff thereat, and in that the

13

defendants, their agents, servants and employees were otherwise negligent, careless and reckless.

73. That the aforesaid occurrence to wit: the false arrest and imprisonment, assault and battery and the resultant injuries to mind and body therefrom, were caused wholly and solely by reason of the negligence of the defendants, their agents, servants and employees without any negligence on the part of the plaintiff.

74. That by reason of the aforesaid, the plaintiff was injured in mind and body, still suffers and, upon information and belief, will continue to suffer great physical and mental pain, and was rendered sick, sore, lame and disabled and so remains, and was incapacitated from her usual occupation and has expended and incurred divers sums of money as a result of the indignities and humiliation foisted upon her by the actions of the defendants, their agents, servants and employees, including counsel fees and disbursements; and the plaintiff has been otherwise damaged.

75. That by reason of the aforesaid, the plaintiff has been damaged in the amount of $2,000,000.00 against all defendants.

14

AS AND FOR A SEVENTH CAUSE OF ACTION

76. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs marked 1-75 with the same force and effect as if fully set forth herein.

77. That as plaintiff was lawfully and properly seeking to take photos of a marching band and other attractions at a peaceful demonstration on August 31, 2004, aforementioned defendants, their agents, servants and employees falsely arrested and imprisoned JODY CONCEPCION, assaulted and battered her and deprived her of her rights and liberties as set forth in the Constitutions of the United States and of the State of New York, handcuffed her and threatened her with the possible use of firearms and weapons and the use of physical force, in that defendants arrested her without any conduct on the part of plaintiff to so warrant to wit:

(a) in that all of the actions of the defendants, their agents, servants and employees were calculated to cause bodily and mental injury to the plaintiff, to arrest, restrain and imprison the plaintiff without her consent, the plaintiff was at all times conscious of her arrest, did not consent to the false arrest and the false arrest and imprisonment were not otherwise privileged; and

(b) the arrest and imprisonment were not justified by

15

probable cause or other legal privilege; defendants, their

agents, servants and employees, acting under the color of

statute, ordinances, regulations, customs and usages of the

State, City and County of New York, and under the authority of

their office as police officers for said City, falsely charged

the plaintiff with violating section 240.20 of the Penal Law

although the defendants, acting in such capacity, knew that such

charges were false; and

(c) that defendants, their agents, servants and employees

caused an assault and battery when they in a hostile and/or

offensive manner threatened, touched, handcuffed and held the

plaintiff without her consent in inhumane and unsanitary

conditions, and with the intention of causing harmful and/or

offensive bodily contact to the plaintiff, all without warrant,

probable cause or any lawful cause whatsoever; and

(d) that defendants, their agents, servants and employees

failed to adequately and properly hire, retain, train, supervise,

discipline or in any other way control the behavior and

performance of the defendants, their agents, servants and

employees; that in their hiring practices in the exercise of

their police functions and their failure to enforce the laws of

the State and City of New York is evidence of the reckless lack

of cautious regard for the rights of the public including

16

plaintiff; in that they exhibited a lack of that degree of due care which prudent and reasonable individuals would show in executing the duties of the defendants; and

(e) the failure of defendants, their agents, servants and employees to hire, train, supervise, discipline or in any way control the defendants, in the exercise of their functions; in that their failure to enforce the laws of the State of New York and the City of New York was and is carried out willfully, wantonly, maliciously and with such reckless disregard for the consequences so as to display a conscious disregard for the dangers of harm and injury to the citizens of the State and City of New York including plaintiff; and

(f) due to the acts of the defendants, their agents, servants and employees herein, the failure of the City of New York to discipline and properly hire the defendants and the continued employment of the defendants presents a clear and present danger to the citizens of the City and State of New York; and

(g) that the said prosecution and criminal charges and hearings were instituted and procured by the defendants, their agents, servants and employees in this action unlawfully and maliciously and without any reasonable or probable cause whatsoever therefore. That the commencement and/or continuation

17

of the criminal proceedings by the defendants against the plaintiff was without probable cause, with actual malice and was terminated in favor of the plaintiff; and

(h) that defendants, their agents, servants and employees permitted the use of policy and/or drafted policy that violated the constitutional rights of the above named plaintiff; and, that each and all of the acts of the defendants, their agents, servants and employees alleged herein were done not as individuals but under color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York, the City of New York and the County of New York, and under the authority of their office as police officers for said city on county; and

(i) that defendant CITY OF NEW YORK, acting at the behest of and in concert with the RNC, conspired with defendant RNC to violate the constitutional rights of New Yorkers and other persons by designing and implementing a plan to remove from the streets and exposure in the media, New Yorkers and other persons peacefully protesting or appearing to protest the policies of the Republican Party during the Republican National Convention in New York City.

78. That plaintiff JODY CONCEPCION did not commit any illegal act, either before or at the time she was falsely

18

arrested and imprisoned, assaulted and battered, maliciously prosecuted and deprived of her constitutional rights as set forth in the Constitution of the United States, particularly 42 U.S.C. Section 1983 and the Constitution of the State of New York.

79. That at all times hereinafter mentioned, defendant police officers were employed in their respective capacities by the defendant THE CITY OF NEW YORK and were acting under the color of their official capacity and their acts were performed under the color of the policies, statutes, ordinances, rules and regulations of the City of New York.

80. That at all times hereinafter mentioned, defendant RNC acted in concert with defendant CITY OF NEW YORK, to plan the removal of peaceful demonstrators and/or those appearing to demonstrate from the streets of New York from August 31-September 2, 2004, during the Republican National Convention in York City, in violation of their constitutional rights.

81. That upon information and belief, the purpose of said removal of peaceful private citizens from the street of New York in violation of their First, Fourth, Sixth and Fourteenth Amendment rights under the Constitution of the United States, was to control negative publicity regarding public opposition to policies of the Republican Party during the convention in New York City.

19

82. That upon information and belief, the purpose of said removal of peaceful private citizens from the street of New York in violation of their First, Fourth, Sixth and Fourteenth Amendment rights under the Constitution of the United States, was to suppress and have a chilling effect upon public dissent during the convention in New York City.

83. That at all times hereinafter mentioned, the defendant RNC, a private association, conspired with defendant, the City, a municipal corporation, to develop policies to be carried out by the various agencies of the City of New York, including but not limited to the NYPD, to arrest, detain, imprison, prosecute and otherwise remove from public view, New Yorkers and other persons protesting or appearing to protest the policies of the Republican Party during the 2004 Convention.

84. That on August 27, 2004, DAVID NORCROSS, Chairman of the Committee on Arrangements for the 2004 Republican National Convention publicly admitted in a press conference that the Republican National Committee and the New York City Police Department had been working on security for this Convention for the year prior thereto.

85. That on August 27, 2004, and at various times prior to that date, DAVID NORCROSS had direct conversations with Mayor Bloomberg and/or other City officials regarding plans to control

20

visible dissent during the Republican National Convention in New York City.

86. That DAVID NORCROSS publicly admitted to the Trenton Times in March, 2004, that he had been meeting at least once a month with the GOP convention committee and the New York Police Department to come up with a master security plan by May 1.

87. That WILLIAM HARRIS, Republican National Committee's Chairman for the Republican National Convention, also participated in said meetings.

88. That the SITE CITY AGREEMENT FOR THE 2004 REPUBLICAN NATIONAL CONVENTION, signed by Mayor Bloomberg on January 31, 2004, on behalf of the City of New York, Section 5.19, Security and Related Protective Services, provided the following:

> a) The Host Committee has secured the agreement of the City, at the City's cost, to provide police and fire protection and assistance as shall be adequate to the needs of a convention the size and unique nature of the Convention and as specified in a Convention security plan to be jointly prepared by the Host Committee, the City, and the COA [Committee on Arrangements, the entity representing the Republican National Committee], in consultation with MSG and Vornado, as applicable and *subject to approval by the COA, with advice from a professional security consultant designated by the COA, if necessary,* and paid for by the Host Committee (the "Convention Security Plan"). The Convention Security Plan will include, without limitation, the use of City Police (as defined below) and will provide for security and crowd control (both inside and outside all applicable venues)..."

89. That Section 5.19(d) further provided that:

21

> Matters relating to law enforcement both within
> and outside the Convention Complex during the
> Convention Period shall be subject to the ultimate
> authority of the Police Commissioner of the City, in
> consultation with the COA [Committee on Arrangements]
> and the Host Committee.

90. That as a result of said written agreements, the
Committee on Arrangements for the Republican National Committee
became a "state actor" with respect to law enforcement issues
during the Republican National Convention.

91. That the tactics and methodology agreed upon by and
between the defendants City of New York and RNC, and acted upon
by the defendant City of New York, included restricting visible
forms of dissent on the public streets, sidewalks and other
public places in New York City during the course of the
Convention to wit:

(a) Indiscriminate use of orange mesh nets to effectuate
mass arrests;

(b) Failure to give warnings to disperse or otherwise
give opportunity to disperse;

(c) Failure to insure that innocent bystanders were not
arrested;

(d) Presence of police in full riot gear;

(e) Use of police on scooters to disperse dissenters and

22

bystanders;

(f) Arraigning of persons charged with minor offenses rather than releasing them with desk appearance tickets or summons, in order to keep streets clear of demonstrable dissent;

(g) Indiscriminate fingerprinting of persons arrested for minor offenses;

(h) Indiscriminate photographing, videotaping and monitoring persons participating in lawful and peaceful protest;

(i) Up to three day delays in processing of said persons charged until after the conclusion of the convention;

(j) Detention in a facility other than a Department of Corrections facility and unsuitable for prisoners, and

(k) Confiscation of cameras, cell phone and bicycles and/or other personal property as "arrest evidence;"

(l) Visible placement of police snipers on along protest routes;

(m) Routing dissenters toward barricades with the intent of enclosing dissenters and breaking up gatherings;

(n) Penning in dissenters and bystanders in order to make mass arrests; and

(o) Falsely charging large groups of peaceful dissenters

23

and bystanders with a variety of violations and misdemeanors maliciously causing those falsely arrested and falsely prosecuted to make repeated court appearances.

92. That in order to effectuate this policy, the offices of Court Administration, the Legal Aid Society, the Hudson River Trust and other agencies and entities were advised and mobilized by the City of New York to accommodate prospective mass arrests and preventive detention.

93. That at all times hereinafter mentioned, defendant, Police Officer ALEXIS FERNANDEZ together with the Police Officers "JOHN DOE" and "JANE DOE" 1-15, were acting pursuant to orders and directives from defendant CITY OF NEW YORK, in concert with REPUBLICAN NATIONAL COMMITTEE through its agent, the COMMITTEE ON ARRANGEMENTS.

94. That in furtherance of their conspiracy and subsequent cover-up of the said conspiracy, Corporation Counsel for the defendant City of New York, at taxpayers expense, substituted in for private counsel to represent the Republican National Committee, a private entity in this action. Said representation of a private political party is in violation of the City Charter, the gifts provision of the New York State Constitution, and in violation of their own indemnification agreement in the Site City Agreement, Section 5.1 (a), which

24

specifically *precludes* indemnification for claims "arising out of or relating to the fraud, willful misconduct, or gross negligence of such Host Committee and RNC Indemnified Party..." Conspiracy to violate civil rights constitutes *willful misconduct*, and is therefore not covered in the said indemnification agreement.

95. That during all times hereinafter mentioned, the defendant police officers and each of them, separately, and in concert, acted under color and pretense of law, to wit: under color of the statutes, ordinances, regulations, customs and usages of The City of New York and the defendants here, separately and in concert, engaged in the illegal conduct here mentioned to the injury of the plaintiff, JODY CONCEPCION, and deprived plaintiff of the rights, privileges and immunities secured to plaintiff by the First, Fourth, Sixth and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

96. That the Police Officers of the defendant CITY OF NEW YORK and its individual members who are agents, servants and employees of defendants, together with persons unknown to plaintiff, acting under color of law, have subjected plaintiff and other persons to a pattern of conduct consisting of illegal harassment, assault and battery, false imprisonment and arrest, denial of due process rights, denial of the right to make a phone

call for an unreasonable period of time, illegal seizure of property, failure to advise of right to counsel and malicious prosecution, at the time plaintiff and others were lawfully and properly on the public sidewalks demonstrating, appearing to demonstrate, or in the vicinity of demonstrators in the County of New York, City and State of New York, in denial of rights, privileges and immunities guaranteed plaintiff, JODY CONCEPCION, and other citizens by the Constitution of the United States.

97. That on information and belief, the computerized fingerprints and/or photographs of plaintiff were forwarded to other agencies and private data bases, including but not limited to the Federal Bureau of Investigation without her consent, despite public assurances by defendant CITY OF NEW YORK that said personal information was destroyed.

98. That on information and belief, the systematic pattern of conduct consists of a large number of individual acts of violence, intimidation, false arrest, false imprisonment, excessive detention and malicious prosecution visited on plaintiff, JODY CONCEPCION, and other citizens by members of the police department of defendant THE CITY OF NEW YORK, acting in concert with persons unknown to plaintiff and at the behest of representatives of the REPUBLICAN NATIONAL COMMITTEE, including but not limited to David Norcross and William Harris, and under

color of law and said acts, while carried out under color of law, have no justification or excuse in law and are instead illegal, improper and unrelated to any activity in which police officers may appropriately and legally engage in the course of protecting persons or property or ensuring civil order.

99. That although defendants knew or should have known of the fact that this pattern of conduct was carried out by their agents, servants and employees, the defendant THE CITY OF NEW YORK, has not taken any steps or made any efforts to halt this course of conduct, to make redress to the plaintiff or other citizens injured thereby, or to take any disciplinary action whatever against any of their employees or agents.

100. That the unlawful and illegal conduct of the defendants, their agents, servants and employees and each of them, deprived plaintiff of the following rights, privileges and immunities secured to her by the Constitution of the United States and of the State of New York:

(a) The right of plaintiff to be secure in her person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States;

(b) The right of plaintiff to be informed of the nature and cause of the accusation against her as secured to her under

27

the Sixth and Fourteenth Amendments to the Constitution of the United States;

(c) The right of plaintiff not to be deprived of life, liberty or property without due process of law, and the right to equal protection of the laws secured by the Fourteenth Amendment to the Constitution of the United States; and

(d) The right to freedom of expression and assembly as guaranteed by the First Amendment to the Constitution of the United States.

101. That by reason of the aforesaid violations, false arrest, false imprisonment, assault and battery and malicious prosecution caused by the defendants, their agents, servants and employees who conspired together to enter into a nefarious scheme to wrongfully deprive the plaintiff and compel her to abandon her rights and privileges as provided to her in the Constitution of the United States of America, and provided to her in the Constitution of the State of New York, and laws thereto, the defendants, their agents, servants and employees violated 42 U.S.C. Section 1983 in that the defendants, their agents, servants and employees acted as persons who under color of any statute, ordinance, regulation, custom or usage of the City of New York, subjected or caused to be subjected, a citizen of the United States or other persons within the jurisdiction,

28

particularly the Plaintiff, JODY CONCEPCION, thereof, to be deprived of her rights, privileges or immunities received by the Constitution and laws of the United States of America and of the State of New York; was subjected to great indignities and humiliation, and pain and distress of mind and body and was held up to scorn and ridicule, injured in her character and reputation, was prevented from attending her usual business and vocation and was injured in her reputation in the community and the acts aforementioned were committed with the aim of injuring and damaging plaintiff.

102. That by reason of the aforesaid intentional assault and battery, false arrest, false imprisonment, malicious prosecution and deprivation of her rights and liberties as guaranteed by the aforementioned constitutions, by the defendants, their agents, servants and employees, acting within the scope of their authority, and without any probable or reasonable cause, the plaintiff suffered injury about her wrists, and limbs, and was rendered sick, sore, lame and disabled, and among other things she suffered conscious pain and suffering and that she was otherwise damaged.

103. That by reason of the aforesaid, the plaintiff requests the following relief:

(a) compensatory damages against the defendants in the amount of

29

$2,000,000;

(b) punitive damages against the defendants in the sum of $20,000,000;

(c) an award of reasonable attorney's fees, costs and disbursements;

(d) Plaintiff requests a trial by jury of all issues in this complaint; and

(e) such other and further relief as this court may deem just and proper under the circumstances.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

104. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs marked 1-96 as if fully set forth herein.

105. That by reason of the aforesaid false arrest, false imprisonment, assault and battery and malicious prosecution caused willfully and maliciously by the defendants, their agents, servants and employees, the plaintiff was wrongfully deprived of her rights, privileges and benefits as provided to her under the Constitution of the State of New York; sustained injuries to her wrists, shoulders and arms; was rendered sick, sore, lame and disabled and was subjected to great indignities and humiliation, and pain and distress of mind and body, and was held up to scorn and ridicule, injured in her character and reputation, was

30

prevented from attending her usual business and vocation, was injured in her reputation in the community and the acts aforementioned were committed with the aim of injuring and damaging the plaintiff.

106. That by reason of the aforesaid, plaintiff demands punitive damages in the amount of $20,000,000. against all defendants.

WHEREFORE, the plaintiff demands judgment against the defendants as follows:

First Cause of Action - TWO MILLION DOLLARS

Second Cause of Action - TWO MILLION DOLLARS

Third Cause of Action - TWO MILLION DOLLARS

Fourth Cause of Action - TWO MILLION DOLLARS

Fifth Cause of Action - TWO MILLION DOLLARS

Sixth Cause of Action - TWO MILLION DOLLARS

Seventh Cause of Action - Compensatory Damages-TWO MILLION DOLLARS

Punitive Damages - TWENTY MILLION DOLLARS

Eighth Cause of Action - Punitive Damages - TWENTY MILLION DOLLARS, together with the costs and disbursements of this action.

31

Dated: New York, New York
        February 7, 2007

_____
KAREN WOHLFORTH, ESQ.


_____
ZELDA STEWART, ESQ.


ATTORNEYS FOR PLAINTIFF
299 BROADWAY, SUITE 1700
NEW YORK, NEW YORK 10007
(212)619-2457

32

# VERIFICATION

STATE OF NEW YORK    )
                             ) SS:
COUNTY OF NEW YORK  )

JODY CONCEPCION being duly sworn says the following:

I am the plaintiff in the within action. I have read the foregoing Verified Second

Amended Complaint and know the contents thereof, the same is true to my own

knowledge, except as to the matters therein stated to be alleged on information and

belief and as to those mattes I believe it to be true.

Dated: February 8ᵗʰ, 2007

_____
JODY CONCEPCION

Sworn to me on the 8th
day of February 2007

_____
NOTARY PUBLIC
ZELDA E. STEWART
NOTARY PUBLIC, State of New York
No. 02ST5043835
Qualified in Kings County
Commission Expires May 15, 2007



# Records Show Extra Scrutiny Of Detainees In '04 Protests

## By JIM DWYER

When more than a thousand people were swept up in mass arrests during the 2004 Republican National Convention, defense lawyers complained in court that the protesters had to wait much longer to see a judge than those accused of far more serious crimes like robbery or assault.

Now, newly released city records not only put precise numbers to those claims, but also show the special scrutiny the New York Police Department gave to people arrested in, or near the convention protests.

At the height of the mass arrests, on Aug. 31, 2004, demonstrators — and some people who said they were bystanders just swept up by the police — were held for an average of 32.7 hours before they saw a judge, according to city statistics. For people charged with crimes that the police decided were not related to the convention, the wait to see a judge was just under five hours.

Those records were among the materials produced by the city for lawsuits brought by people who claim they were wrongly arrested during the convention. A federal magistrate judge permitted the release of the records, over objections by the city, in response to a request made by The New York Times and by Christopher Dunn and Donna Lieberman of the New York Civil Liberties Union, which is representing seven of the hundreds of people who are suing the city.

Ms. Lieberman said that by fingerprinting every person arrested at the convention, no matter how minor the infraction, the Police Department created a backlog on Aug. 31.

"We found out that the Police Department had a special set of rules in place for the R.N.C., and they didn't necessarily comport with the law,"

---

*Held for 32 hours on charges equivalent to a traffic ticket.*

---

said Ms. Lieberman, the executive director of the civil liberties organization. "We learned that there was

delays in taking photographs... result in the extraordinary number of arrests... some 1,100 people were taken into custody in about four hours. During the rest of the convention, the records show that people were brought to court in less than 24 hours, the normal deadline.

The vast majority of those arrested were held on charges of roughly the same weight as a traffic ticket, and the law does not require fingerprinting for those offenses. However, the Police Department determined months before the convention that no one would be given a summons; instead anyone taken into custody would be sent through a full arrest process, including fingerprints and criminal record checks. Police officials said that for public safety, it was important to use fingerprints to confirm identities.

Paul J. Browne, the chief spokesman for the Police Department, said the department did issue desk appearance tickets to some of those charged, meaning those people did not have to wait to see a judge.

The people arrested during the protests were taken to a holding pen on a Hudson River pier. Conditions at the pier, a former bus depot, were the subject of many complaints at the time. Mayor Michael R. Bloomberg responded, "It's not Club Med, don't make any mistake about it, and it's not supposed to be Club Med."

The records released this week show that it was not just prisoners who were unhappy with the conditions: 40 police officers submitted medical reports, saying they became ill after working there. Mr. Browne said that environmental tests in 2004 showed that the pier was safe.

He also took exception to one critiques by the civil liberties union.

"We believe it is improper for the N.Y.C.L.U., attorneys for plaintiffs in some of these cases, to be making comments to the press about this active litigation," Mr. Browne said.

Mr. Dunn of the civil liberties union said that the records concerned matters of public interest. "Any suggestion that disclosure of these documents somehow is inappropriate reflects an unfortunate hostility to the public's right to know about the policing of protest activity," Mr. Dunn said.

In allowing the release of the records, Magistrate Judge James C. Francis IV said the city had not shown that its chances for a fair trial would be hurt if the civil liberties group made the records public.

The judge also wrote that the city "can remedy any confusion that results from disclosure of these documents by providing public clarification."

Exhibit C

# SITE CITY AGREEMENT

# FOR

# THE 2004 REPUBLICAN NATIONAL CONVENTION

00008103

Section 5.19  Security and Related Protective Services.

(a)   The Host Committee has secured the agreement of the City, at the City's cost, to provide police and fire protection and assistance as shall be adequate to the needs of a convention the size and unique nature of the Convention and as specified in a Convention security plan to be jointly prepared by the Host Committee, the City, and the COA, in consultation with MSG and Vornado, as applicable, and subject to approval by the COA, with advice from a professional security consultant designated by the COA, if necessary, and paid for by the Host Committee (the "**Convention Security Plan**"). The Convention Security Plan will include, without limitation, the use of City Police (as defined below) and will: (i) provide for security and crowd control (both inside and outside all applicable venues) and traffic control for activities related to the Convention during the Lease Periods; (ii) set forth the respective roles and responsibilities of City law enforcement personnel ("**City Police**"), the United States Secret Service, any security force of the Convention Complex, other private security personnel, and other federal, state, and local agencies; and (iii) take into account the requirements for security, crowd control, and traffic control in other cities in which earlier presidential nominating conventions of both political

28

CONFIDENTIAL

000081

parties have been held. The Convention Security Plan will include, without limitation, provisions for securing the Convention Complex and all other Leased Facilities, Special Event Venues, Associated Areas, and the hotels and motels within the City housing participants of the Convention, and the public property surrounding or adjacent to the foregoing, as necessary.

(b) In support of the foregoing, (i) the City Agreement includes, without limitation, the agreement of the City, at the City's cost, to provide such number of City Police, inside and outside the Convention Complex, the other Leased Facilities, and Special Event Venues as specified in the Convention Security Plan at all times during the Lease Periods; and (ii) the Host Committee has secured the agreement of MSG and shall provide, as applicable, private security personnel as specified in the Convention Security Plan and in sufficient number as specified in the Convention Security Plan, inside Madison Square Garden and other Leased Facilities, as applicable, and as appropriate for a national political convention; provided, however, that such private security personnel shall not interfere with the City Police activity(ies) and shall cooperate fully with the City Police to insure the public safety, all as determined by the City Police.

(c) The Host Committee has secured the agreement of the City, at the City's cost, to provide adequate personnel to control ingress to and egress from the Convention Complex, the other Leased Facilities, and the Special Event Venues and, if so provided in the Convention Security Plan, the construction and maintenance of security barriers or other obstacles at the Leased Facilities or elsewhere, the blockage of traffic, the closing of streets, the provision of restricted traffic lanes, and the provision of official escorts for certain vehicles (including, without limitation, vehicles transporting delegates), as specified in the Convention Security Plan.

(d) During the Lease Periods with respect to the Convention Complex, and during the period of use (together with reasonable periods preceding and following such use) with respect to the other Leased Facilities, the Special Event Venues, and the Associated Areas, matters relating to control of ingress to and egress from such areas shall be subject to the ultimate authority of the COA, subject to the City's access requirements. Matters relating to law enforcement both within and outside the Convention Complex during the Convention Period shall be subject to the ultimate authority of the Police Commissioner of the City, in consultation with the COA and the Host Committee.

(e) The COA, the Host Committee, and the City shall also mutually agree on a

29

CONFIDENTIAL

000081035

Traffic Control Plan. The Host Committee has secured the agreement of the City, at the City's cost, to provide, during the Convention Period, adequate traffic control personnel to facilitate the orderly flow of traffic into, from, and between the Convention Complex, each of the other Leased Facilities, and the Special Event Venues used by the COA pursuant to this Site City Agreement, each of the hotels and motels located within the City housing participants of the Convention, and area airports, pursuant to such Traffic Control Plan. The Traffic Control Plan will provide for exclusive use by the COA of space sufficient to permit convenient and efficient debarkation and embarkation to and from the Convention Complex. The Traffic Control Plan will include, without limitation, reasonable provisions, subject to applicable law, for ensuring vehicular and pedestrian movements related to the Convention through the public property surrounding or adjacent to the Convention Complex, and the other Leased Facilities and the Special Event Venues, as necessary, as well as the closing of streets or other public byways, the provision of restricted traffic lanes, and the provision of official escorts for certain vehicles (including, without limitation, vehicles transporting delegates), as necessary.

(f)    The Host Committee has secured the agreement of the City, at the City's cost, to provide adequate security as specified by the Convention Security Plan, including, without limitation, police protection and traffic control at and in all hotels and motels located within the City housing participants of the Convention, including, without limitation, officers, delegates, and alternate delegates of the Convention and employees, candidates, members of the Convention, and employees of the RNC and of the COA. The Host Committee also has secured the agreement of the City, at the City's cost, to provide adequate security, as specified by the Convention Security Plan, to delegations, officers, and candidates of the Convention, and designated officials of the RNC and the COA in transit between such hotels and motels and the Convention Complex and other Leased Facilities during the Lease Periods.

(g)    The City agrees to designate an individual, with the approval of the COA, to supervise the security services to be provided pursuant to this Section 5.19 and to serve as liaison and to coordinate with appropriate personnel of the Host Committee, the COA, the United States Secret Service, and any security force of the Convention Complex. The City has agreed that such individual may not be replaced without the prior consent of the Host Committee and the COA; provided, however, that if such individual is unable to serve in this position, the City may replace him after consultation with the COA and the Host Committee. Such designated individual or his designee shall be available on a 24-hour basis during all Lease Periods.

30

CONFIDENTIAL

(h)   The Host Committee also has secured the agreement of the City, at the City's cost, to provide the COA with radio communication facilities and equipment to permit efficient communication with City Police. The COA shall return to the Host Committee such radio communication equipment after the Convention Period and shall use its best efforts to return such radio communication equipment in good and operable condition, reasonable wear and tear excepted. The Host Committee has agreed to return to the City such radio communication equipment after the Convention Period, in good and operable condition, reasonable wear and tear excepted.

(i)   The Host Committee has secured the agreement of the City, at the City's cost, to provide a secure weapons storage facility for firearms and weapons not allowed to be carried in the Leased Facilities.

31

CONFIDENTIAL

00008

# ARTICLE V

## Other Covenants of the City

Section 5.1    Indemnification.

(a)    Terms of Indemnification. The City agrees to indemnify and hold harmless the Host Committee, the RNC, the COA, and all of their members, directors, officers, officials, employees, agents, attorneys, Volunteers (as defined in the Site City Agreement), and consultants of the RNC and of the COA (collectively, the "**Host Committee and RNC Indemnified Parties**") from and against any and all liabilities, obligations, damages, penalties, claims, costs, charges, and expenses (including, without limiting the generality of the foregoing, accountants', attorneys', and other consultants' fees and expenses) (collectively, and as used throughout this Agreement, "**Costs**"), including, without limiting the generality of the foregoing, any of the foregoing arising out of or relating to the negligence of any Host Committee and RNC Indemnified Party which may be imposed upon, incurred by, or asserted against any of the Host Committee and RNC Indemnified Parties arising out of or relating to (i) the performance or breach of the respective obligations and representations of the Host Committee under the Site City Agreement or any agreements entered into relating to performance under the Site City Agreement, the Madison Square Garden Lease Agreement, the Farley Lease Agreement, the agreement that will be entered into with Vornado, and this City Agreement; (ii) any other respective acts or omissions of the Host Committee or the City or of any of their officers, directors, officials, employees, agents, contractors, subcontractors at any tier, or vendors (including, without limiting the generality of the foregoing, attorneys and consultants) arising out of or related to the Convention; (iii) any other activities of any of the City or the Host Committee and RNC Indemnified Parties, respectively, contemplated by the Site City Agreement; or (iv) any bodily injury, personal injury, or property damage sustained by any person, entity, or organization whether or not at the "Leased Facilities," as such term is defined in the Site City Agreement, resulting from the activities relating to the use, renovation, or construction of the Leased Facilities and all activities related to the Convention or services to be provided pursuant to the Site City Agreement. This Indemnity shall and hereby does expressly exclude, with respect to each Host Committee and RNC Indemnified Party, such Costs which may be imposed upon,

13

00008104

incurred by, or asserted against, such Host Committee and RNC Indemnified Party, arising out of or relating to the fraud, willful misconduct, or gross negligence of such Host Committee and RNC Indemnified Party and others for whom such Host Committee and RNC Indemnified Party is legally responsible. The RNC and COA shall be, and are hereby deemed to be, third-party beneficiaries of this Indemnity and shall have the right to submit claims to the City pursuant to the procedures as set forth in subsection (b), and the City shall have the obligation to furnish a defense and indemnity to a Host Committee and RNC Indemnified Party as herein provided, and the provisions hereof with regard to the defense and indemnification of Host Committee and RNC Indemnified Parties shall not be changed, amended, modified or terminated without the express written consent of the Host Committee, and the RNC or COA.