UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

N° 05 Civ. 8501 (RJS)

---

JODY CONCEPCION,

Plaintiff,

VERSUS

THE CITY OF NEW YORK, POLICE OFFICER ALEXIS FERNANDEZ, SHIELD #29781, "JANE AND JOHN DOES" 1-15, AND THE REPUBLICAN NATIONAL COMMITTEE,

Defendants.

---

MEMORANDUM AND ORDER
May __, 2008

---

RICHARD J. SULLIVAN, District Judge:

Plaintiff Jody Concepcion brings this action against defendants the City of New York ("the City"), Police Officer Alexis Fernandez, several unnamed defendants and the Republican National Committee ("RNC"), alleging violations of her civil rights pursuant to 42 U.S.C. § 1983 and state common law claims. Plaintiff asserts, *inter alia*, claims for false arrest, false imprisonment, malicious prosecution, assault and battery, and conspiracy to violate her civil rights.

Defendants now move for judgment on the pleadings against plaintiff's conspiracy claim. Plaintiff cross-moves for leave to amend that claim by filing the proposed second amended complaint. For the following reasons, defendants' motion is granted, and the conspiracy claim is dismissed without prejudice. Plaintiff's cross-motion for leave to file the proposed second amended complaint is denied.

I. BACKGROUND

A. The Facts

In reviewing a motion to dismiss, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

The following facts are taken from the proposed Second Amended Complaint ("PSAC") and are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding defendants' motion and construes them in the light most favorable to plaintiff, the non-moving party. The Court recites only those facts necessary to resolve the instant cross-motions directed at plaintiff's conspiracy claim.

On August 30, 2004, plaintiff was arrested by officers of the New York City Police Department ("NYPD") while she attempted to photograph a protest during the Republican National Convention (the "Convention"), which was being held at that time in New York City. (PSAC ¶ 17.) Plaintiff alleges that the police lacked probable cause for her arrest. (Id. ¶ 19.) Moreover, plaintiff asserts that, during the course of her arrest, she was assaulted by police officers.[1] (Id. ¶ 19.)

Thereafter, according to plaintiff, she was wrongfully detained by police for approximately fourteen hours in a holding facility located at Pier 57 on the west side of Manhattan — where she was allegedly exposed to "unsanitary" conditions and "toxic substances" — and then moved, for an additional thirty-three hours, to various holding cells located at 100 Centre Street in lower Manhattan. (Id. ¶¶ 27-28.) Plaintiff also alleges that, after her release from police custody, she was "falsely and maliciously" prosecuted for disorderly conduct.[2] (Id. ¶¶ 40-45.)

According to plaintiff, her allegedly unlawful arrest and prosecution were the result of a conspiracy by defendants to violate the constitutional rights of "New Yorkers and other persons peacefully protesting or appearing to protest" during the Convention. (Id. ¶ 77(i).) Plaintiff identifies a number of participants in this alleged conspiracy, including the City and the Republican National Committee ("RNC") (id.), as well as David Norcross, Chairman of the Committee on Arrangements ("COA") for the Convention (id. ¶ 98), and William Harris, the RNC's Chairman for the Convention (id.).[3]

B. Procedural History

On August 30, 2005, plaintiff filed the initial complaint in this action in the Supreme Court of the State of New York, New York County. On October 3, 2005, the City removed the action to this Court. On November 23, 2005, plaintiffs filed the First Amended Complaint, and defendants filed an answer on December 5, 2005.

On March 1, 2007, defendants filed the instant motion. In response to defendants' motion, plaintiff cross-moved for leave to file the PSAC, which adds allegations relating

---

[1] Plaintiff alleges that Officer Fernandez was one of several officers who allegedly "stopped, assaulted and arrested" her "without probable cause." (PSAC ¶¶ 17-18.)

[2] According to the PSAC, all charges against plaintiff were dismissed on November 29, 2004. (PSAC ¶ 61.)

[3] Plaintiff asserts that the COA is an "agent" of the RNC. (PSAC ¶ 93.)

2

solely to plaintiff's conspiracy claim.[4] On February 6, 2008, the Court heard oral argument regarding the parties' cross-motions, and, subsequently, the parties submitted supplemental briefing relating thereto.

## II. STANDARD OF REVIEW

### A. Judgment on the Pleadings

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland*, 448 F.3d at 521. In *Bell Atlantic Corporation v. Twombly*, the Supreme Court addressed the standard for review of a Rule 12(b)(6) motion to dismiss. 127 S.Ct. 1955, 1965 (2007). The Court held that, in order to withstand such a motion, the "[f]actual allegations" contained in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (internal citation omitted). The Court also observed that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. Ultimately, the Court observed, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

Therefore, the complaint must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (internal citation omitted)). If the plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Twombly*, 127 S.Ct. at 1974.

### B. Motion to Amend

Plaintiffs' cross-motion to amend under Rule 15(a) is also reviewed under the Rule 12(b)(6) standard. Rule 15(a) permits a party to amend its pleadings by leave of the court, and further directs that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "In the absence of any apparent or declared reason — such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

Here, defendants do not argue that they would be unduly prejudiced by permitting the amendments or that there was undue delay by plaintiff in seeking leave to amend. Rather, defendants oppose the proposed amendments solely on the ground that such amendments would be futile. "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). Accordingly, the Rule 12(b)(6) standard applies both to defendants' motion for judgment on the pleadings as well as plaintiff's cross-motion to amend.

---

[4] This case was originally assigned to the Honorable Kenneth M. Karas, District Judge. It was reassigned to the undersigned on October 2, 2007.

III. DISCUSSION

A. The Proposed Second Amended Complaint

As an initial matter, the Court identifies the pleading that will be the subject of this decision. In their submissions to the Court, defendants have presented arguments regarding the viability of the conspiracy claims set forth in both the First Amended Complaint and the PSAC. The PSAC *adds* allegations regarding plaintiffs' conspiracy claim, and does not subtract or modify any of the allegations currently set forth in the First Amended Complaint. Therefore, dismissal of the conspiracy claim in the PSAC pursuant to the Rule 12(b)(6) standard would necessarily require dismissal of the conspiracy claim in the First Amended Complaint. Conversely, if this Court were to conclude that the amendment in the PSAC was not "futile" under the Rule 12(b)(6) standard, that finding would render moot defendants' motion to dismiss the First Amended Complaint. Therefore, the Court will evaluate the viability of the conspiracy claim set forth in the PSAC, as its resolution of that issue will necessarily determine the viability of both of the pleadings submitted by plaintiff.

B. Motion to Dismiss the Second Amended Complaint

Defendants argue that the PSAC fails to sufficiently allege an illegal agreement in order to state a conspiracy claim that is plausible on its face. In response, plaintiff asserts that, although the PSAC fails to describe the "actual content" of the alleged discussions wherein defendants reached an agreement, she has adequately pled a conspiracy claim. (Pl.'s Mem. at 8.)

For the following reasons, the Court finds that plaintiff has failed to allege sufficient facts to state a plausible conspiracy claim.

A. Legal Standard

"In order to survive a motion to dismiss on [her] § 1983 conspiracy claim, [the plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. " *Ciambrello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." *Id.* at 325 (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993)); *Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983 . . . ."). Moreover, it is well-settled that, although "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, [] the pleadings must present facts tending to show agreement and concerted action." *McIntyre v. Longwood Central School Dist.*, No. 07 Civ. 1337 (JFB), 2008 WL 850263, at *11 (E.D.N.Y. Mar. 27, 2008) (internal quotation marks and citations omitted).

Although both parties assert that the standard set forth in *Ciambrello* governs the instant dispute (*see* Pl.'s Mem. at ; Defs.' Mem. at 4-5), the Court briefly addresses the continued viability of the *Ciambrello* standard in this Circuit. In *Toussie v. Powell*, the Second Circuit declined to "consider whether

4

[its] previous statements on the pleading requirements for [civil rights] conspiracy allegations remain valid in light of two subsequent Supreme Court decisions, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)." 323 F.3d 178, 185 n.3 (2d Cir. 2003) (citing, *inter alia*, *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990) ("It is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights.")). In the two Supreme Court decisions referenced in *Toussie*, the Court "rejected judicially established pleading requirements on the principle that where the Federal Rules of Civil Procedure do not specify heightened pleading requirements, Rule 8(a)(2)'s liberal system of 'notice pleading' governs." *Id.* (internal citation omitted); *see also Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 513 n.18 (S.D.N.Y. 2003) (declining to "resolve the apparent tension between the pleading standards set forth in *Ciambriello/Pangburn* and *Swierkiewicz*").

Nevertheless, following *Toussie* and the two Supreme Court opinions cited therein, courts in this Circuit have continued to evaluate the viability of conspiracy claims pursuant to the standard enunciated in *Ciambrello* — namely, that "complaints containing only conclusory, vague, or general allegations . . . are properly dismissed." 292 F.3d at 325; *see, e.g., Walker*, 430 F.3d at 564 n.5 ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983 . . . .") (citing *Ciambrello*); *Farbstein v. Hicksville Public Library*, 254 Fed. Appx. 50, 51, 2007 WL 3407434, at *1 (2d Cir. Nov. 15, 2007) (internal citation omitted)[5]; *Burke v. APT Found.*, 509 F. Supp. 2d 169, 173-74 (D. Conn. 2007) (dismissing a civil rights conspiracy claims pursuant to the *Ciambrello* standard); *Williams v. New York City Hous. Auth.*, No. 05 Civ. 2750 (DC), 2007 WL 4215876, at *5 (S.D.N.Y. Nov. 30, 2007) (same); *see also Olmeda v. Babbits*, No. 07 Civ. 2140 (NRB), 2008 WL 282122, at *6 (S.D.N.Y. Jan. 25, 2008) ("Given [his] conclusory and unsupported allegations, [the plaintiff] has not met his burden of pleading a conspiracy.").

Moreover, in 2007, the Supreme Court held in *Bell Atlantic v. Twombly* that a plaintiff must go beyond mere "labels and conclusions" in stating the grounds on which he is entitled to relief, and emphasized that "a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. at 1973-74. The Court specifically noted that "*Swierkiewicz* did not change the law of pleading, but simply re-emphasized . . . that the Second Circuit's use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements." *Id.* at 1973.

Therefore, courts' continued application of the *Ciambrello* standard — or something similar thereto — notwithstanding the Supreme Court's affirmation of Rule 8(a)'s "notice pleading requirement," *see Toussie*, 292 F.3d at 325, is in accord with the "critical distinction between the notice requirements of

---

[5] The Court notes that the decision in *Farbstein* is an unpublished summary order and, therefore, "do[es] not have precedential effect." Local Rules of the Second Circuit, Rule 0.23. Nevertheless, the decision is instructive as to the continued viability of the rule, set forth in *Ciambrello* and *Walker*, that vague or conclusory allegations of conspiracy are insufficient to withstand a motion to dismiss.

5

Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted." *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (vacating the district court's dismissal of a complaint pursuant to Rule 8(a), but noting that "a series of 12(b)(6) motions to dismiss would lie to permit each particular defendant to eliminate those causes of action as to which no set of facts has been identified that support a claim against him"); *see In re Terrorist Attacks on Sept. 11, 2001*, 392 F. Supp. 2d 539, 564 (S.D.N.Y. 2005) ("While *Swierkiewicz* made clear that pleading a *McDonnell Douglas prima facie* case was not necessary to survive a motion to dismiss, it did not even remotely suggest that a pleading could survive dismissal when it contained only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based.") (quoting *Jackson v. BellSouth Telecomm'ns*, 372 F.3d 1250, 1270-71 (11th Cir. 2004))

Therefore, in accord with Supreme Court precedent as well as the overwhelming weight of authority in this Circuit, this Court applies the *Ciambrello* standard in evaluating the sufficiency of the conspiracy claim in the SAC under the Rule 12(b)(6) standard. In this regard, and in light of the Supreme Court decisions referenced in *Toussie* as well as more recent Second Circuit authority, the Court notes that it does not construe the decision in *Ciambrello* as imposing a "heightened pleading requirement[]" for civil rights conspiracy claims, *Toussie*, 323 F.3d at 185, nor a requirement that plaintiff must plead "specific facts" to support his claim, *see Boykin v. KeyCorp*, — F.3d —, 2008 WL 817111, at *22 (2d Cir. Mar. 27, 2008) ("[B]oth *Twombly* and [*Erickson v. Pardus*, 127 S.Ct. 2197 (2007)] explicitly disavow that Rule 8(a) requires any plaintiff . . . to plead 'specific facts.'"). Rather, it reads *Ciambrello* as informing this Court's understanding of the type of factual allegations that are minimally sufficient to state a "plausible" conspiracy claim under § 1983.

With these principles in mind, the Court turns to the parties' cross-motions.

B. Analysis

1. The Alleged Conspiracy

In regard to her conspiracy claim, plaintiff alleges that the City, acting "at the behest of and in concert with" the RNC, "conspired" with the RNC to violate "the constitutional rights of New Yorkers and other persons by designing and implementing a plan to remove from the streets and exposure in the media, New Yorkers and other persons peacefully protesting or appearing to protest the policies of the Republican Party during [the Convention]." (*Id.* ¶ 77(i).) Plaintiff offers several additional conclusory allegations regarding the alleged conspiracy, to wit: "defendant RNC acted in concert with defendant City of New York, to plan the removal of peaceful demonstrators" (*id.* ¶ 80); "the purpose of said removal . . . was to control negative publicity regarding public opposition to policies of the Republican Party" (*id.* ¶ 81); "the defendant RNC . . . conspired with defendant, the City, . . . to develop policies . . . to arrest, detain, imprison, prosecute and otherwise remove [protesters] from public view" (*id.* ¶ 83); and "the systematic pattern of conduct consists of . . . THE CITY OF NEW YORK, acting . . . at the behest of representatives of the [RNC], including but not limited to David Norcross and William Harris, and under color of law" (*id.* ¶ 98).

6

The above-cited allegations, by themselves, fail to state a conspiracy claim. They do not offer sufficient factual details regarding an agreement among defendants to violate the civil rights of plaintiff, or anyone else. Rather, they constitute the type of "vague, conclusory, and general" allegations that, standing alone, are routinely found lacking under the Rule 12(b)(6) standard. *See Ciambrello*, 292 F.3d at 325; *Olmeda*, 2008 WL 282122, at *6.

However, apart from these conclusory assertions, the PSAC includes several additional factual allegations that, according to plaintiff, support a plausible claim of conspiracy. First, plaintiff offers the following factual allegations in support of her conspiracy claim:[6]

(1) On August 27, 2004, "David Norcross, Chairman of the COA" stated in a press conference that the RNC and the NYPD "had been working on security for this Convention for the year prior thereto." (*Id.* ¶ 84.)

(2) Prior to August 27, 2004, Norcross "had direct conversations with Mayor Bloomberg and/or other City officials regarding plans to control visible dissent" during the Convention. (*Id.* ¶ 85.)

(3) In March 2004, Norcross "publicly admitted" that "he had been meeting at least once a month with the GOP convention committee and the [NYPD] to come up with a master security plan by May 1."[7] (*Id.* ¶ 86.)

Second, in the PSAC, plaintiff outlines fifteen examples of the alleged "tactics and methodology agreed upon by and between the defendants City of New York and RNC." (*Id.* ¶ 91.) These include, *inter alia*, the "[i]ndiscriminate use of orange mesh nets to effectuate mass arrests," the "[f]ailure to insure that innocent bystanders were not arrested," "arraigning of persons charged with minor offenses rather than releasing them with desk appearance tickets or summons, in order to keep streets clear of demonstrable dissent," "indiscriminate fingerprinting of persons arrested for minor offenses," "[v]isible placement of police snipers [] along protest routes," and "[f]alsely charging large groups of peaceful dissenters and bystanders . . . ." (*Id.* ¶ 91(a)-(o).) However, plaintiff fails to offer any additional details regarding these policies, their relationship to the alleged agreement among the RNC and the City, or the City's use of such tactics during the Convention. In addition, plaintiff fails to offer any details regarding the City's use of these tactics at any point during the Convention; rather, the PSAC merely asserts, in a vague and general allegation, that the City "acted upon" these tactics. (¶ 91.)

Finally, plaintiff asserts that a written agreement entitled the "Site City Agreement for the 2004 Republican National Convention" (PSAC Ex. C) — portions of which are quoted in and attached to the PSAC — sufficiently establishes a "meeting of the minds" among the RNC and the City so as to

---

[6] The Court refers to the following three allegations collectively as the "Norcross allegations."

[7] Plaintiff alleges that "William Harris, the Republican National Committee's Chairman for the [the Convention] also participated" in these meetings. (PSAC ¶ 87.)

state a plausible conspiracy claim.[8] (*See* Pl.'s Mem. at 2.) Plaintiff asserts that the Site Agreement is an agreement among the City (*see* PSAC ¶ 88); the New York City Host Committee 2004 (the "Host Committee"), a non-profit corporation formed to coordinate arrangements for the convention; and the RNC, and its agent, the COA.[9] (*See id.* ¶ 93.)

In the PSAC, plaintiff quotes from section 5.19 of the Site Agreement, which relates to "Security and Related Protective Services." The quoted portion reads, in relevant part, as follows:

> The Host Committee has secured the agreement of the City, at the City's cost, to provide police and fire protection and assistance . . . as specified in a Convention security plan to be jointly prepared by the Host Committee, the City, and the COA, . . . as applicable and subject to approval by the COA . . . . The Convention Security Plan will include . . . the use of City Police . . . and will provide for security and crowd control (both inside and outside all applicable venues) . . . . Matters relating to law enforcement both within and outside the Convention Complex during the Convention Period shall be subject to the ultimate authority of the Police Commissioner of the City, in consultation with the COA and the Host Committee."

(PSAC Ex. C, ¶¶ 88-89.)[10]

2. The Plausibility of Plaintiff's Conspiracy Allegations

The Court finds that the above-cited allegations fail to support a conspiracy claim that is plausible on its face. In so ruling, the Court recognizes that "'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn*, 200 F.3d at 72 (internal citation omitted). Thus, in order to allege a plausible conspiracy claim, the law does not require plaintiff to, for example, allege the existence of a written agreement among defendants that actually contains the word "conspiracy" or explicitly identifies an illegal purpose. *See, e.g.*, *Gardiner v. Incorp. Vill. of Endicott*, 50 F.3d 151, 156 (2d Cir. 1995) ("[P]arties seeking to prove a conspiracy must typically rely on circumstantial evidence.") (internal citations omitted).

However, notwithstanding these liberal pleading requirements, plaintiff is not relieved at this stage of the case of her obligation to

---

[8] Hereinafter, the Court refers to the Site City Agreement as the "Site Agreement." Moreover, the Court notes that, although it must assume at this stage of the case that plaintiff's characterization of the Site Agreement is accurate, defendants do not appear to dispute that the Site Agreement exists or that the portions of the Agreement quoted in and attached to the complaint are, in fact, accurate copies of the Site Agreement. (*See* Defs.' Reply Mem. at 5-6.)

[9] By order dated August 6, 2006, the Honorable James C. Francis, Magistrate Judge, to whom this case has been assigned for discovery, directed defendants to produce portions of the Site Agreement to plaintiff. *See Concepcion v. City of New York*, No. 05 Civ. 8501 (KMK) (JCF), 2006 WL 2254987, at *4 (S.D.N.Y. Aug. 6, 2006).

[10] The Site Agreement was filed under seal pursuant to a protective order previously entered in this action. Therefore, the Court shall file both an unredacted version of this decision under seal as well as a publically available version in which the Court has redacted the quotations extracted from the text of the Site Agreement.

allege facts — beyond mere "conclusory, vague, or general allegations" — sufficient to plausibly assert the existence of an agreement between a state actor and a private party to inflict an unconstitutional injury. *Ciambrello*, 292 F.3d at 324-25. Plaintiff's allegations in the PSAC fail to satisfy this standard. Indeed, as set forth below, the PSAC fails to sufficiently allege that Norcross' interactions with City officials and/or the Site Agreement constituted an agreement to violate plaintiff's civil rights, or that the overt acts listed in the PSAC were done in furtherance of such an agreement. Therefore, assuming the truth of plaintiff's allegations and drawing all reasonable inferences in her favor, the Court finds, for the following reasons, that plaintiff has failed to amplify her conclusory allegations of conspiracy with sufficient facts regarding an illegal agreement among defendants in order to state a conspiracy claim that is plausible on its face. *See id.*

In *Twombly*, the Supreme Court found that, notwithstanding "a few stray statements speak[ing] directly of agreement" that "are merely legal conclusions resting on the prior allegations," the complaint failed to sufficiently allege a conspiracy claim where it contained mere "descriptions of parallel conduct" absent "any independent allegation of actual agreement among the [defendants]." 127 S.Ct. at 1974. Here, the PSAC likewise identifies a substantial amount of conduct that is certainly "parallel," in that it occurred at around the same time and concerned the same event — namely, the Convention. However, the PSAC offers insufficient factual allegations supporting the existence of either (1) an agreement among defendants to act in concert, or (2) an illegal purpose underlying that agreement. Thus, as set forth below, plaintiff's allegations regarding the conduct of Norcross prior to the RNC and the Site Agreement fail to sufficiently allege a conspiracy claim that is plausible on its face.

First, the Norcross allegations fail to sufficiently allege an illegal agreement involving Norcross and a state actor. Indeed, the fact that Norcross, a representative of the RNC, "work[ed] on security" with the NYPD, had "direct conversations" with City officials regarding the "control of visible dissent," or held monthly "meeting[s]" with Republican Party and NYPD officials regarding a "security plan" (PSAC ¶¶ 84-86), does not support a plausible claim that Norcross or the RNC reached an *agreement* with any other individual or entity, let alone an agreement to violate plaintiff's civil rights. Rather, even assuming the allegations to be true, they merely indicate that Norcross interacted, in some manner, with state actors. However, as one district court has observed in reviewing a civil rights conspiracy claim, "[a]lleging merely that a private party regularly interacts with a state actor," as plaintiff does in this case, "does not create an inference of agreement to violate a plaintiff's rights." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) (internal citations omitted); *see Williams*, 2007 WL 4215876, at *6 (finding that, where the plaintiff alleged merely that a private party "witnessed" an allegedly unconstitutional act by a state actor, the complaint failed to "allege facts to support the existence of an agreement" between the private party and the state); *see also Rzayeva v. United States*, 492 F. Supp. 2d 60, 82 (D. Conn. 2007) ("Although Plaintiffs generally assert that a network of conspirators exists among [the named defendants] and others to deprive Plaintiffs of their civil rights . . . , they allege no facts to establish that the private defendants entered an agreement with the state actors to inflict a particular unconstitutional injury upon them.").

9

Moreover, plaintiff's conclusory allegations that the RNC and the City "acted in concert" (PSAC ¶ 80) and "conspired" (*id.* ¶ 81) to violate plaintiff's civil rights do not, when viewed in conjunction with the Norcross allegations, "nudge[]" plaintiff's conspiracy claim "across the line from conceivable to plausible . . . ." *Twombly*, 127 S.Ct. at 1974. Rather, the factual assertions contained in the Norcross allegations fail to fill in the gaps of plaintiff's conclusory assertions of a conspiracy involving the RNC and the City. Specifically, the Norcross allegations — as noted *supra* — do not provide sufficient details regarding an illegal agreement between Norcross, or any other RNC official, and the City in order to state a plausible conspiracy claim, nor do they provide a sufficient basis to infer that the conduct of Norcross, or any other RNC official, prior to the Convention resulted or was intended to result in the tactics allegedly employed by the City during the Convention. Thus, although plaintiff alleges *"on information and belief . . .* that the City "act[ed] . . . at the behest" of RNC officials, "including Norcross" (*id.* ¶ 98 (emphasis added)), the PSAC fails to offer a sufficient factual basis for this assertion in order to state a plausible claim for relief. *Miller v. City of New York*, No. 05 Civ. 6024 (SJ), 2007 WL 1062505, at *4 (E.D.N.Y. Mar. 30, 2007) ("[W]hile facts and evidence solely within a defendant's possession and knowledge may be pled 'on information and belief,' this does not mean that those matters may be pled lacking any detail at all.") (citing, *inter alia, First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004)); *see DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("[T]he allegations must be accompanied by a statement of the facts upon which the belief is based.").

Accordingly, because the Norcross allegations do not plausibly support the existence of an illegal agreement and/or a meeting of the minds among the RNC and a state actor arising from Norcross' alleged "work[]," "meeting[s]," and "conversations" (PSAC ¶¶ 84-86), there remains an absence of any "facts consistent with" the conclusory assertions in the PSAC regarding an agreement to violate plaintiff's civil rights. *Twombly*, 127 S.Ct. at 1969.

Second, the Court finds that plaintiff's allegations regarding the Site Agreement do nothing to cure this defect in the pleadings. In ¶¶ 88 and 89 of the PSAC, plaintiff merely quotes portions of the Site Agreement, and, in ¶ 90, conclusorily asserts that, "as a result" of the agreement, the COA "became a 'state actor' with respect to law enforcement issues during the [Convention]." (PSAC ¶ 90.) The PSAC fails to offer any additional allegations regarding the Site Agreement — on "information and belief" or otherwise.[11]

Plaintiff asserts in her brief that the Site Agreement sets forth the defendants' "collaboration on all matters of law enforcement involving the convention" (Pl.'s Mem. at 8), and that "this agreement resulted in the promulgation and effectuation of [the] policies" listed in ¶ 91 of the PSAC (*id.* at 5). However, while plaintiff asserts *in her brief* that the Site Agreement demonstrates that defendants agreed to "collaborat[e]" on a plan

---

[11] The Site Agreement is also referenced in ¶ 94, wherein plaintiff asserts that the Corporation Counsel is improperly serving as counsel for the RNC in this action "in violation of [the] indemnification agreement in the Site City Agreement." (PSAC ¶ 94.) That issue is not before the Court at this time, except to the extent that plaintiff identifies the representation as being conducted "in furtherance of" the conspiracy alleged elsewhere in the PSAC. (*Id.*)

to violate plaintiff's civil rights (*id.*) and that the Site Agreement "resulted in" the allegedly unconstitutional tactics employed by the NYPD during the RNC, she fails to present similar — or any — allegations to that effect in the PSAC. Rather, the PSAC and the portions of the Site Agreement quoted therein merely provide that the City, the Host Committee, and the COA have agreed to prepare a "Convention Security Plan," and that "[m]atters relating to law enforcement both within and outside the Convention Complex during the Convention Period shall be subject to the ultimate authority of the Police Commissioner of the City, in *consultation* with the COA and the Host Committee." (PSAC Ex. C (emphasis added).)

Thus, drawing all reasonable inferences in plaintiff's favor, the Court finds that the plain language of the Site Agreement quoted in ¶¶ 88-89 and attached to the PSAC fails to offer any factual basis from which it could be reasonably inferred that the "consultation" referenced therein amounted to an agreement to violate plaintiff's civil rights or to engage in any of the overt acts listed in ¶ 91 of the PSAC. Indeed, the Site Agreement makes absolutely no reference to policies regarding crowd control tactics, arrest procedures, or to any of the alleged overt acts of the conspiracy set forth in ¶ 91 of the PSAC. Therefore, given the paucity of plaintiff's allegations relating to the Site Agreement, the Court finds that the allegations in the PSAC regarding the Site Agreement fail to sufficiently amplify plaintiff's conclusory allegations of a conspiracy so as to state a claim for relief on that basis.

Finally, as to the additional factual allegations offered in plaintiff's brief (*see* Pl.'s Mem. at 5, 8), the Court notes the well-settled rule that "[f]actual allegations contained in legal briefs or memoranda are [] treated as matters outside the pleading for purposes of Rule 12(b)," and, therefore, cannot be considered by the Court at the motion to dismiss stage. *See, e.g., Fonte v. Bd. of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988) ("[I]t would [] have been error for the court to consider the factual allegations contained in the plaintiffs' memorandum of law without converting the motion to one for summary judgment.") (internal citation omitted); *Eldridge v. Springs Indus., Inc.*, 882 F. Supp. 356, 358 (S.D.N.Y. 1995). Thus, the Court finds that the additional factual allegations presented in plaintiff's brief cannot, as a matter of law, cure the deficiencies in the PSAC.[12]

IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the conspiracy claim is GRANTED, and plaintiffs' cross-motion to amend that claim is DENIED on the basis of futility. The conspiracy claim set forth in the First Amended Complaint is dismissed

---

[12] Moreover, even assuming *arguendo* that it was appropriate to consider the additional allegations set forth in plaintiff's brief, the Court finds that such allegations, taken together with the PSAC, do not state a plausible conspiracy claim. Specifically, it is clear that the additional allegations in plaintiff's brief are entirely conclusory and, therefore, fail to remedy the defects in the PSAC discussed herein. (*See, e.g.*, Pl.'s Mem. at 9 ("Plaintiff pleads with great specificity matters which have since been established in the record . . . , that the policies [listed in ¶ 91 of the PSAC] were formulated in order to effectuate mass arrests of demonstrators and to detain those arrested until the convention was over."); *id.* at 11-12 ("The facts in the pleading demonstrate the express written agreement between the parties, the resultant acts or policies in furtherance of the conspiracy to effectuate mass arrests of demonstrators . . . , and the particular act resulting in the false arrest and detention of the plaintiff.").)

11

without prejudice. Plaintiff shall submit a letter within one week of the date of this decision regarding her intention to file a second motion for leave to amend the complaint.

The Clerk of the Court is respectfully requested to terminate the motions docketed as document numbers 64, 66, and 71.

SO ORDERED.

*[signature]*

RICHARD J. SULLIVAN
United States District Judge

Dated: May 7, 2008
New York, New York

\* \* \*

Plaintiff is represented by Karen Finkel Wohlforth, Esq., 299 Broadway Suite 1700, New York, New York 10007. Defendants are represented by Jeffrey A. Dougherty, Esq., Special Assistant Corporation Counsel, Jay Alan Kranis, Esq., Assistant Corporation Counsel, and Michael A. Cardozo, Esq., Corporation Counsel of the City of New York, 100 Church Street, New York, New York 10007.

12